LOUIS ROTHENBERG v. CLARENCE H. PACKARD.

[52 South. 458.]

CONTRACTS. *Breach. Right of action. Theaters. Actors on strike. New contract. Emergency unforeseen.*

Where by the terms of a written contract between the manager of a theatrical company and the owner of a playhouse, the latter was to pay the former seventy per centum of the gross receipts of two performances to be enacted in the house, one in the afternoon and the other in the evening of the same day, and just before the time for beginning the first performance the manager's actors and actresses refused to appear upon the stage at either performance until the arrearages of their salaries due them by the manager were paid, and thereupon the traveling agent of the manager, with the consent and concurrence of the actors and actresses, verbally agreed with the owner of the house that he should pay the seventy per centum of the proceeds to them on their salaries, and the plays were performed thereunder and the seventy per centum appropriated in accordance therewith, the owner was not liable to the manager under the written contract for any part of the receipts.

FROM the circuit court of Lauderdale county.

HON. JOHN L. BUCKLEY, Judge.

Packard, appellee, was plaintiff in the court below; Rothenberg, appellant, was defendant there. From a judgment in plaintiff's favor, predicated of a peremptory instruction, the defendant appealed to the supreme court.

The plaintiff was the manager of a company of actors and actresses; the defendant owned a playhouse or theater building in Meridian. The parties entered into a written contract by which two theatrical performances were to be given by plaintiff's company in defendant's house, one in the afternoon and the other in the evening of the same day, and plaintiff was to be paid by defendant seventy per centum of the receipts, to be collected by defendant.

When the time approached for the beginning of the first. performance the actors and actresses belonging to plaintiff's. company made known the fact that they would not appear upon the stage at either performance unless the sums due them for salaries in arrear were paid.    Plaintiff's traveling agent being· unable to pay them, applied to Jones, defendant's agent in charge of the house, to know what could be done.    This led to· a conference between the parties and the striking actors and actresses in which it was verbally agreed that defendant should pay the seventy per centum of the two performances to the· actors and actresses to be credited on their salaries, and that the· performances should be enacted.    Plaintiff's traveling agent assented, the actors and actresses acquiesced, the performances. were given under the verbal contract and the defendant appro-- priated the seventy per centum in accordance therewith.

Afterwards plaintiff sued defendant on the written contract,. which contained the following provisions, among others:—

"It is agreed that during this engagement no performance or- rehearsal other than herein stipulated shall take place at the· above mentioned building without the consent of the .said (plaintiff) first party.

"The party of the first part (plaintiff) is in no way respon- sible for· any moneys advanced to his agent or representative· unless specially authorized in writing.

"This contract is personal and not assignable, and must be- carried out by the parties hereto and not by others.

"The party of the first part (plaintiff) is not to be held responsible ·in case sickness or other unforeseen occurrence· should prevent him filling above date."

*Bozeman & Fewell,* for appellant.

The stipulation of the contract sued on in these words: "It · is agreed that during this engagement no performance or re-

hearsal other than herein stipulated shall take place at the above mentioned building without the consent of the said first party" has nothing to do with this controversy. It was never contemplated by the parties to said contract that the situation confronting Jones and the company and their adjustment of same would be a violation of this provision.

Undoubtedly the above provision was to prevent other shows or plays being produced at the opera house on the dates fixed for the production of plaintiff's plays. It was never designed for the purpose of preventing the production of this same show in the event that the actors refused to act under said contract.

The situation presenting itself to Jones, manager for appellant, was wholly unforeseen and relieved the appellee from his contract as provided by the following section thereof: "The party of the first part is not to be held responsible in case sickness or any other unforeseen occurrence should prevent him filling above date, etc."

Was it not incumbent on the plaintiff in this case to have shown at least a readiness to perform his part of the contract and was it not also incumbent upon him to show an ability, upon his part, to have performed his part of the contract?

Neither a readiness nor an ability was shown in this case. On the contrary the undisputed facts appear in the record that the plaintiff was wholly unable to have performed his contract. The actors and actresses would not have performed under the contract between plaintiff and defendant. Jones' testimony on this point is wholly uncontradicted and shows beyond controversy that the plaintiff could not and would not have performed his contract but on the contrary same had been wholly breached and broken. Was it not incumbent upon the defendant to have done what he could to have lessened the damages? Did he not owe himself that duty in addition to the duty to lessen his own damages as against the plaintiff here? We think so, and we do not think the proposition debatable.

*F. V. Brahan,* for appellee.

The salient clauses of the contract are as follows:

"The party of the first part is in no way responsible for any moneys advanced to his agent or representative, unless especially authorized in writing," and again, "This contract is personal and not assignable and must be carried out by the parties hereto and not by others."

Under the provisions of the contract between Packard and Rothenberg the seventy per cent of the two performances belongs to Packard; and Rothenberg had no authority to make a new contract with the actors, who were employed by Packard, with the consent of Dubois, his manager.

Packard was not consulted nor informed as to the alleged action of Beresford and the members of his company, prior to their giving a performance in Meridian.

WHITFIELD, C.

It is perfectly manifest from the whole record that the contract under which the performances in question were given was not the written contract on which the appellee relies. There is nothing in that written contract to prohibit making a verbal contract under which the performances in this case were rendered. The situation was that the actors and actresses in the company refused to perform at all because their salaries were in arrears. The appellee had breached his contract with them, and there is nothing in the evidence to hint at ability on the part of the appellee to perform the contract, or any readiness or offer on his part to perform the contract. With this situation wholly unforeseen, the appellant made the contract under which this performance was rendered, a contract wholly independent of the contract on which the appellee relies. There was perfect authority and right on the part of the parties to the verbal contract to make it. No right of the appellee was thereby infringed. It was simply a case of emergency wholly

unforeseen, in which emergency this verbal contract was made,. in order that the performance might proceed.

It follows, of course, that the giving of the peremptory instruction by the court below was manifest error. It was for the jury to say whether they would believe the witness Jones, the appellant's manager, or not, about what the terms of this verbal contract were. If they did believe him, the appellant was clearly entitled to a verdict. Whether they would believe Jones was a question for them, and not for the court.

The judgment is reversed, and the cause remanded for a new trial.

Per Curiam. For the reasons set out in the opinion of the Commissioner, the judgment is *reversed,* and the cause *remanded.*